UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NERIS VICTOR BATRES (A- 246-060-063),

Petitioner,

v.

WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,[1]

Respondent.

No. 1:26-cv-2514 DAD CSK

ORDER and FINDINGS AND RECOMMENDATIONS

Petitioner Neris Victor Batres (A-246-060-063), a native and citizen of El Salvador who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[2]  Petitioner entered the United States some time prior to 1991.  On August 28, 2025, petitioner was arrested and detained and has been in continuous detention since this date.  This habeas action concerns petitioner's detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering respondent to immediately release petitioner.

---

[1]  The warden of the California City Correctional Center is substituted as respondent.  Fed. R. Civ. P. 25(d); Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).

[2]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

I.      FACTUAL BACKGROUND[3]

Petitioner, a 56 year-old native and citizen of El Salvador, entered the United States some time prior to 1991.  (ECF No. 1 at 7.)  In 1991, petitioner was issued a Social Security number, and granted employment authorization by the U.S. Department of Justice.[4]  (Id.; ECF No. 9-1.)  Petitioner provided copies of his 1991 employment authorization form, and his employment authorization and Social Security cards.  (ECF No. 1 at 9, 11.)  Petitioner's last work authorization under A094-155-167 was granted in 2002, and was valid until August 29, 2003.  (ECF No. 9-2.)  Immigration records confirm petitioner has no pending immigration bond.  (ECF No. 5-1 at 5.)

On August 28, 2025, petitioner was stopped and detained while ICE agents performing an immigration operation in front of a Home Depot in Los Angeles.  (See ECF No. 5-1 at 3-4.)  He was subsequently transferred to California City Detention.  (Id. at 2.)

Petitioner was not provided with any pre-deprivation or post-deprivation bond hearing, which respondent does not dispute.[5]  (See ECF No. 1 at 6; ECF Nos. 5, 9.)  Though the record reflects that petitioner may have sustained criminal convictions over 21 years ago (ECF No. 5-1 at 5), respondent does not contend that petitioner is detained on any criminal basis or that petitioner is a danger or flight risk.  (ECF No. 5, 9.)

---

[3] Petitioner filed a verified habeas petition.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[4] Although petitioner claims he was previously granted political asylum (ECF No. 1 at 7), respondent disputes this and provided evidence that petitioner's application for asylum and withholding of removal under "A094-155-167" was deemed abandoned by USCIS and denied on July 8, 2005 (ECF Nos. 9-3).  In addition, petitioner claims he subsequently applied for a status adjustment under A-094-155-167, which he states is still in progress.  (ECF No. 1 at 7.)  However, respondent provided evidence that the Executive Office for Immigration Review has no record of A-094-155-167 in its online system.  (ECF No. 9-4.)  Petitioner was subsequently assigned a different A-number after his re-detention, A-246-060-063.  (ECF No. 1 at 7.)

[5] This Court issued a further briefing order requiring respondent to submit "documents governing petitioner's immigration status, including any order granting petitioner political asylum, any orders by immigration judges ruling on custody redeterminations or requests for bond hearings issued since petitioner was re-detained on August 28, 2025, Notices to Appear, any and all release orders, parole documents/orders, orders of supervision, and detention orders." (ECF No. 8)  The records submitted by respondent confirms that petitioner was not provided with a bond hearing.  (See ECF Nos. 9-1 to 9-8.)

Petitioner has been continuously detained since August 28, 2025. (ECF No. 1 at 4.) Petitioner alleges that he is depressed, was recently diagnosed with diabetes, and has lost communication with his family because he lacks funds to contact them. (Id. at 7.)

## II.    PROCEDURAL BACKGROUND

On April 2, 2026, petitioner filed his petition for writ of habeas corpus. (ECF No. 1.) On April 16, 2026, respondent timely filed a motion to dismiss the petition. (ECF No. 5.) On April 20, 2026, petitioner filed a motion to proceed in forma pauperis, and on April 20, 2026, petitioner paid the filing fee. (ECF No. 7.) Petitioner did not file an opposition to the motion to dismiss. (See Docket.) Because the record did not contain sufficient information to determine the issues presented, on May 27, 2026, respondent was ordered to "submit pertinent documents governing petitioner's immigration status, including any order granting petitioner political asylum, any orders by immigration judges ruling on custody redeterminations or requests for bond hearings issued since petitioner was re-detained on August 28, 2025, Notices to Appear, any and all release orders, parole documents/orders, orders of supervision, and detention orders," and both parties were granted leave to file optional supplemental responses. (ECF No. 8.) On June 1, 2026, respondent filed a timely supplemental response with exhibits. (ECF No. 9.) Petitioner did not file an optional supplemental response. (See Docket.) Briefing is now complete.

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533

3

U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court.  The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner."  The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondent's motion to dismiss, or after an answer to the petition has been filed.

## IV.   DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following:  (1) the Fifth Amendment procedural due process clause; (2) the Fifth Amendment substantive due process clause; and (3) the Immigration and Nationality Act ("INA").[6]  (ECF No. 1 at 6.)  Respondent does not argue that petitioner is a flight risk or a danger to the community and instead argues that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) and he is ineligible for a bond hearing.  (ECF No. 5 at 1-2.)  Respondent cites Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here.  (Id.)  Respondent also argues that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 2.)  In the alternative, respondent requests that the Court stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

[6]  In his fourth claim, petitioner states he was previously approved political asylum, including an employment authorization, since 1991.  (ECF No. 1 at 7.)  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes claim four as petitioner's additional statement of facts rather than a separate claim for habeas relief.

4

Respondent does not contend that petitioner is subject to detention under 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231.

### A.    Statutory Claim (Claim Three)

This Court must first decide whether petitioner, who has lived in the United States since at least 1991, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2), as respondent argues.  8 U.S.C. § 1225(b)(2)(A) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).  Respondent contends § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 5 at 1-2.)

The Court concludes that § 1226(a) applies to petitioner.  First, petitioner has lived in the United States for over thirty years, and in 1991, petitioner was granted authorization to work and was provided a Social Security card.  (ECF No. 1 at 7.)  Petitioner's work authorization was renewed in 2002.  (ECF No. 9-2.)  Respondent does not dispute these facts.  (See ECF No. 5.)

Second, this Court agrees with and joins the majority of courts nationwide, including the

5

Eastern District of California, in rejecting respondent's new interpretation[7] of Sections 1225 and 1226. See, e.g., Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."); Lopez-Campos v. Raycraft, et al., 2026 WL 1283891, at *1 (6th Cir. May 11, 2026)[8]; Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject

---

[7] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196.

[8] The full case citation also includes the following: Juan Manuel Lopez-Campos (25-1965); Juan Carlos Sanchez Alvarez (25-1969); Jose Daniel Contreras-Cervantes; Fredy De Los Angeles-Flores; Mariela Virginia Ocando-Leon; Luis Felipe Jarquin-Jarquin; Debbie Vasquezcruz; Jairo Manuel Godoy-Perez; Marifer Diaz-Alcantar; Miguel Angel Reyes-Sanchez (25-1978); Jesus Jose Pizarro Reyes (25-1982) v. Kevin Raycraft, Immigr. & Customs Enf't, Acting Dir. of Detroit Field Off., Enf't & Removal Operations (25-1965/1969/1978/1982); Markwayne Mullin, Sec'y of U.S. Dep't of Homeland Security; U.S. Dep't of Homeland Sec. (25-1965/1969); Todd W. Blanche, Acting U.S. Att'y General; Exec. Off. of Immigr. Rev. (25-1965), 2026 WL 1283891, at *1 (6th Cir. May 11, 2026).

to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondent's reliance on Buenrostro-Mendez, 166 F.4th 494 and Avila, 2026 WL 819258, is unavailing. This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava, 161 F.4th at 1060-62, and Barbosa da Cunha, 2026 WL 1146044, to be more persuasive. See also Lopez-Campos, 2026 WL 1283891, at *1; Hernandez Alvarez, 2026 WL 1243395; Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava, 161 F.4th at 1052); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). As the Second Circuit explained in Barbosa da Cunha:

7

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.
>
> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha, 2026 WL 1146044 at *2.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for over 34 years before his current detention, and petitioner's August 2025 arrest and detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his detention and is entitled to relief on his statutory claim.

## B.    Due Process Claims (Claims One and Two)

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated without pre-

custodial hearing or notice.  (ECF No. 1 at 6.)  Respondent argues petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 5 at 2.)  Respondent's arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner was known to government authorities and allowed to live in the United States free of custody for over 34 years, as demonstrated by his authorization to work and issuance of a Social Security card in 1991, and renewed authorization to work in 2002. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's lengthy time out of custody gave rise to a constitutionally protected liberty interest.

Respondent provided no evidence that petitioner was subject to any form of immigration supervision despite being known to government authorities since at least 1991, and immigration records confirm petitioner had no pending immigration bond. In light of all of the foregoing, the Court finds that petitioner's extensive time out of custody without any supervision created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that

10

"the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 34 years, petitioner was free from immigration detention before his August 2025 detention. Petitioner obtained work authorizations in 1991 and 2002. (ECF No. 1 at 9, 11; ECF No. 9-2.) The 34 year duration of his freedom from immigration detention prior to the 2025 detention elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody

11

redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF Nos. 5, 9.) In addition, respondent does not contend that petitioner's criminal record subjects him to mandatory detention under 8 U.S.C. § 1226(c). (Id.) Here, petitioner has been detained for over nine months since August 28, 2025. Petitioner has not been provided an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. (ECF No. 1 at 6.) Respondent does not dispute this. (See ECF Nos. 5, 9.) Respondent must demonstrate that petitioner's 2025 detention is reasonably related to a valid government purpose. See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner has been free of immigration detention for over 34 years after petitioner was granted work authorization and issued a Social Security card in 1991, and his criminal record is remote in time and does not subject him to mandatory detention under 8 U.S.C. § 1226(c). See Pinchi, 792 F. Supp. 3d at 1036.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor

of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claims.

## V.    MOTION TO PROCEED IN FORMA PAUPERIS

Petitioner filed a motion to proceed in forma pauperis. (ECF No. 7.) However, on April 24, 2026, petitioner paid the filing fee. Thus, petitioner's motion is denied as moot.

## VI.    RESPONDENT'S REQUEST TO STAY

Respondent's alternative request that this matter be stayed pending a ruling by the Ninth Circuit in Rodriguez v. Bostock, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since August 25, 2025, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country. A stay would put a further strain on limited judicial resources.

## VII.    RESPONDENT'S MOTION TO DISMISS

For the reasons set forth above, respondent's motion to dismiss should be denied.

## VIII.   CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on two separate grounds: (1) petitioner's statutory claim, and (2) petitioner's due process claims.

13

Accordingly, IT IS HEREBY ORDERED that petitioner's motion to proceed in forma pauperis (ECF No. 7) is denied as moot.

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent's motion to dismiss (ECF No. 5) be DENIED.

3. Respondent be ordered to IMMEDIATELY release petitioner Neris Victor Batres (A-246-060-063) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5. Given petitioner's pro se status, respondent be directed to file, within **ten days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

6. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that

failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 26, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/batr2514.157.2241.imm.bond

15